# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

SHANA FREEDMAN,

on behalf of herself and all others similarly situated,

      Plaintiff

v.

SUNTRUST BANKS, INC.

and

SUNTRUST MORTGAGE, INC.,
      Defendants

Civil Action No. 1:14-cv-01575 (CKK)

## MEMORANDUM OPINION
(September 21, 2015)

Presently before the Court is Defendants' [14] Motion to Dismiss For Lack of Personal Jurisdiction and Plaintiff's [24] Motion for Leave to File Limited Surreply.  Upon consideration of the pleadings,[1] the relevant legal authorities, and the record as a whole, the Court DENIES Defendants' Motion to Dismiss and DENIES Plaintiff's Motion for Leave to File Limited Surreply.  For the reasons described herein, the Court finds that it lacks personal jurisdiction over Defendants and that jurisdictional discovery is not warranted but that it is in the interest of justice

---

[1] In deciding Defendants' Motion to Dismiss, the Court's consideration has focused on the following pleadings:  Pl.'s Complaint ("Compl."), ECF No. [1]; Defs.' Mot. to Dismiss ("Defs.' Mot."), ECF No. [14]; Pl.'s Mem. in Opp'n to Defs.' Mot. to Dismiss ("Pl.'s Opp'n"), ECF No. [21]; and Defs.' Reply Mem. in Further Supp. of its Mot. to Dismiss ("Defs.' Reply"), ECF No. [23].  In deciding Plaintiff's Motion for Leave to File Limited Surreply, the Court also considered the following pleadings:  Pl.'s Mot. for Leave to File Limited Surreply, ECF No. [24], Defs.' Mem. in Opp'n to Pl.'s Mot. for Leave to File Limited Surreply, ECF No. [25], and Pl.'s Reply to Defs.'s Opp'n to Pl.'s Mot. for Leave to File Limited Surreply, ECF No. [26].  In an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision.  *See* LCvR 7(f).

to transfer the matter to the U.S. District Court for the Middle District of Florida pursuant to 28

U.S.C. § 1406(a) and 28 U.S.C. § 1631.

## I. BACKGROUND

For the purposes of the motion before the Court, the Court accepts as true the well-

pleaded allegations in Plaintiff's Complaint.  The Court does "not accept as true, however, the

plaintiff's legal conclusions or inferences that are unsupported by the facts alleged." *Ralls Corp.*

*v. Comm. on Foreign Inv. in U.S.*, 758 F.3d 296, 315 (D.C. Cir. 2014).  The Court recites the

principal facts pertaining to the issues raised in the pending motions, reserving further

presentation of the facts for the discussion of the individual issues below.

Plaintiff Shana Freedman ("Plaintiff") is a Florida resident who unsuccessfully sought a

home loan from SunTrust Mortgage ("SunTrust") in the fall of 2012.  Compl. ¶ 3, 17, 40.

Plaintiff, whose income consists of long-term Social Security Disability Insurance ("SSDI"), was

ultimately unable to submit a loan application for processing due to a SunTrust policy requiring

her to provide firm assurances that her disability benefits would continue.  *Id.* ¶ 37.  Plaintiff first

experienced difficulties obtaining a home loan from SunTrust in October 2012 when she

attempted to complete an online loan application that did not permit her to indicate income in the

form of SSDI payments.  *Id.* ¶ 26.  Plaintiff contacted a SunTrust loan officer to seek assistance

with the application, explaining that she was disabled and that her income consisted of SSDI

payments.  *Id.* ¶ 26.  Plaintiff also faxed the loan officer her most recent SSDI award letter,

which had no expiration date for her long-term disability benefits.  *Id.* ¶ 31.  Following

consultation with SunTrust's underwriting department, the loan officer informed Plaintiff that

SunTrust had a policy requiring loan applicants whose income consisted of long-term disability

benefits to submit documentation "from a Doctor or from Social Security" indicating that "the

income is going to continue." *Id.* ¶ 33.  Plaintiff could not provide the requested documentation

from the Social Security Administration because that agency does not guarantee future benefits.

*Id.* ¶ 35.  Because Plaintiff was unable to obtain the requested documentation, SunTrust refused

to process her loan application.  *Id.* ¶ 37.  When Plaintiff contacted SunTrust one month later, the

loan officer confirmed that SunTrust's income-verification policy continued.  *Id.*  In accordance

with this policy, SunTrust again refused to process Plaintiff's application.  *Id.* ¶ 37.  On

September 16, 2014, Plaintiff filed this lawsuit as a putative class action on behalf of herself and

other similarly situated borrowers whose income derives from long-term disability assistance.

*Id.* ¶ 41.  Plaintiff alleges that SunTrust's policy of requesting sensitive medical information

regarding an applicant's disability violates the Fair Housing Act, 42 U.S.C. § 3601 *et seq.*, and

the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691 *et seq.  Id.* ¶ 42-43.

The defendants in this action are SunTrust Banks Inc. and SunTrust Mortgage, Inc.

("Defendants").  SunTrust Banks, Inc. is an American bank holding company.  Compl. ¶ 12.  It is

a Georgia corporation with its principal place of business at 303 Peachtree Street NE, Atlanta,

Georgia, 30308.  Defs.' Mot. Exhibit A.[2]  SunTrust Banks, Inc. is one of the largest financial

services organization in the United States, operating 1,700 banks throughout the United States,

including in the District of Columbia.  Compl. ¶ 12.  SunTrust Banks, Inc. operates a number of

retail bank branches in the District of Columbia and maintains a mortgage office in the District.

*Id.*  Defs.' Mot. Exhibit B.  SunTrust Bank, Inc.'s website advertises that SunTrust Bank and its

---

[2] The Court considers Defendants' and Plaintiff's Exhibits as matters of public record. *See Covad Commc'ns. Co. v. Bell Atl. Corp.*, 407 F.3d 1220, 1222 (D.C. Cir. 2005).  In addition, "unlike a motion to dismiss for failure to state a claim, the Court need not confine itself to only the allegations in the complaint, but 'may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction.' " *Frost v. Catholic Univ. of Am.*, 960 F. Supp. 2d 226, 231 (D.D.C. 2013) *aff'd*, 555 F. App'x 6 (D.C. Cir. 2014) (quoting *Jerome Stevens Pharms., Inc. v. FDA,* 402 F.3d 1249, 1253 (D.C. Cir. 2005)).

affiliates offer retail and mortgage banking services "primarily in Florida, Georgia, Maryland, North Carolina, South Carolina, Tennessee, Virginia, and the District of Columbia."  Pl.'s Opp'n Exhibit A.

SunTrust Mortgage, Inc. is a wholly-owned subsidiary of Defendant SunTrust Banks, Inc.. *Id.* ¶ 13.  SunTrust Mortgage, Inc. is a Virginia Corporation with its principal place of business at 901 Semmes Avenue, Richmond, Virginia 23224.  Defs.' Mot. Exhibit B.  SunTrust Mortgage, Inc. operates loans in SunTrust markets throughout the South and mid-Atlantic regions of the Unites States, including the District of Columbia.  Compl. ¶ 13.  It services loans in approximately 48 states and the District of Columbia.  *Id.*  In 2013, SunTrust Mortgage was ranked number eight in mortgage originations in the United States.  *Id.*  Plaintiff alleges that SunTrust Mortgage, Inc. "is and at all relevant times has been a subsidiary of, controlled by, a mere instrumentality of, and an agent of SunTrust Banks such that SunTrust Banks is liable for its acts alleged herein."  *Id.* ¶ 13.

On February 17, 2015, Defendants filed a Motion to Dismiss for Lack of Personal Jurisdiction.  On April 2, 2015, Plaintiff filed her Opposition to Defendant's Motion, requesting in the alternative that the Court transfer the case to the Middle District of Florida.  After Defendants filed their Reply brief on April 27, 2015, Plaintiff filed a motion on May 6, 2015 for leave to file a surreply to bolster arguments in support of the transfer request previously made in her Opposition brief.  Defendants' Reply brief did nothing more than respond to Plaintiff's arguments in support of her transfer request.  Because Defendants did not raise any new arguments in their Reply brief, the Court denies Plaintiff's motion for leave to file a surreply. *Crummey v. Soc. Sec. Admin.*, 794 F. Supp. 2d 46, 63 (D.D.C. 2011) *aff'd*, No. 11-5231, 2012 WL

556317 (D.C. Cir. Feb. 6, 2012) ("[A] surreply is not a vehicle for rehashing arguments that have already been raised and briefed by the parties.").

## II. LEGAL STANDARD

When personal jurisdiction is challenged under Rule 12(b)(2), the plaintiff bears the burden of establishing a factual basis for asserting personal jurisdiction over a defendant. *See Crane v. N.Y. Zoological Soc'y,* 894 F.2d 454, 456 (D.C. Cir. 1990).  At this stage, the plaintiff "can satisfy that burden with a *prima facie* showing." *Mwani v. bin Laden,* 417 F.3d 1, 7 (D.C. Cir. 2005) (quoting *Edmond v. United States Postal Serv. Gen. Counsel,* 949 F.2d 415, 424 (D.C. Cir. 1991)) (emphasis in original).  To do so, the plaintiff cannot rest on bare allegations or conclusory statements but "must allege specific acts connecting [the] defendant with the forum." *Second Amendment Found. v. U.S. Conference of Mayors,* 274 F.3d 521, 524 (D.C. Cir. 2001) (internal quotation marks omitted).  "To make such a showing, the plaintiff is not required to adduce evidence that meets the standards of admissibility reserved for summary judgment and trial[;]" but rather, the plaintiff may "rest her arguments on the pleadings, 'bolstered by such affidavits and other written materials as [she] can otherwise obtain.' " *Urban Inst. v. FINCON Servs.,* 681 F.Supp.2d 41, 44 (D.D.C. 2010) (quoting *Mwani,* 417 F.3d at 7).

In order to obtain jurisdictional discovery a "plaintiff must have at least a good faith belief that such discovery will enable it to show that the court has personal jurisdiction over the defendant." *Caribbean Broad. Sys. Ltd. v. Cable & Wireless PLC,* 148 F.3d 1080, 1090 (D.C. Cir. 1998); *see also Exponential Biotherapies, Inc. v. Houthoff Buruma N.V.,* 638 F. Supp. 2d 1, 11 (D.D.C. 2009) (holding that [j]urisdictional discovery ... is justified only if the plaintiff reasonably 'demonstrates that it can supplement its jurisdictional allegations through discovery.' ") (quoting *Kopff v. Battaglia,* 425 F. Supp. 2d 76, 89 (D.D.C. 2006)).  "Mere conjecture or

speculation" is not enough to justify jurisdictional discovery.  *FC Investment Group LC v. IFX Markets Ltd.,* 529 F.3d 1087, 1094 (D.C. Cir. 2008).

Pursuant to 28 U.S.C. § 1406, courts have authority to transfer a case "laying venue in the wrong division or district" to "any district or division in which it could have been brought," if such a transfer would be "in the interest of justice."  The decision whether a transfer under Section 1406 is in the "interest of justice" rests "within the sound discretion of the district court." *Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 789 (D.C. Cir. 1983).  Transfer is appropriate "when procedural obstacles [such as lack of personal jurisdiction, improper venue, and statute-of-limitations bars] impede an expeditious and orderly adjudication on the merits." *Sinclair v. Kleindienst*, 711 F.2d 291, 293–94 (D.C. Cir. 1983).  Generally, the interests of justice require transferring a case to the appropriate judicial district rather than dismissing it.  *See Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466–67 (1962).

Courts also have authority under 28 U.S.C. § 1631 to transfer a case filed in the wrong jurisdiction, "if it is in the interest of justice" to do so.  When a case is transferred pursuant to 28 U.S.C. § 1631, it "proceed[s] as if it had been filed in . . . the court to which it is transferred on the date upon which it was actually filed in ... the court from which it is transferred." *Id.*  "There are three elements to a section 1631 transfer: (1) there must be a lack of jurisdiction in the district court; (2) the transfer must be in the interest of justice; and (3) the transfer can be made only to a court in which the action could have been brought at the time it was filed or noticed." *Fasolyak v. The Cradle Soc'y, Inc.*, No. 06–1126, 2007 WL 2071644, at *11 (D.D.C. July 19, 2007) (quoting *Ukiah Adventist Hosp. v. FTC*, 981 F.2d 543, 549 (D.C. Cir. 1992)).  As the party requesting transfer, Plaintiff bears the burden of establishing that the elements of a § 1631

transfer have been met.  *See Osage Tribe of Indians of Okla. v. U.S.*, No. 04–283, 2005 WL 578171, at *2 (D.D.C. Mar. 9, 2005).

## III. DISCUSSION

Defendants move to dismiss this action under Rule 12(b)(2) for lack of personal jurisdiction, arguing that it has insufficient contacts with the District of Columbia to support jurisdiction. Plaintiff opposes Defendants' motion and requests in the alternative that the Court permit jurisdictional discovery or transfer the case to the U.S. District Court for the Middle District of Florida pursuant to 28 U.S.C. § 1406, or in the alternative, to 28 U.S.C. § 1631.

The Court finds that there is not jurisdiction over Defendants and that jurisdictional discovery is not warranted.  The Court further finds that it is in the interest of justice to transfer the matter to the U.S. District Court for the Middle District of Florida, which is a competent jurisdiction to hear Plaintiff's claims, pursuant to either 28 U.S.C. § 1406 or 28 U.S.C. § 1631.

### A.  The Court Lacks Personal Jurisdiction over Defendants

Defendant moves to dismiss this action under Rule 12(b)(2) for lack of personal jurisdiction, arguing that they have insufficient contacts with the District of Columbia to support jurisdiction.  *See* Defs.' Mot. at 7-9.  Plaintiff argues that the District of Columbia has general personal jurisdiction over Defendants because of their "continuous and systematic affiliations with the forum state."  Pl.'s Mot. at 9.  Plaintiff is "not aware of facts indicating that her claims arose in the District of Columbia, and she therefore does not attempt to establish specific jurisdiction."  Pl.'s Mot. at 1.

a.  **The Court's Analysis is Governed by the Supreme Court's decision in** *Daimler AG v. Bauman*

Under District of Columbia law, courts may exercise general jurisdiction over foreign corporations such as Defendants when they are "doing business" in the District of Columbia. D.C. Code § 13–334(a).[3]  The scope of the phrase "doing business" as used in the D.C. Code is "coextensive with the reach of constitutional due process."  *Gorman v. Ameritrade Holding Corp.*, 293 F.3d 506, 510 (D.C. Cir. 2002).  Constitutional due process permits a court to exercise general jurisdiction over a foreign corporation only "when the corporation's affiliations with the State in which suit is brought are so constant and pervasive 'as to render [it] essentially at home in the forum state.' "  *Daimler AG v. Bauman,* ⸺ U.S. ⸺, 134 S. Ct. 746, 751, 187 L.Ed.2d 624 (2014) (quoting *Goodyear Dunlop Tire Operations, S.A. v. Brown,* ⸺ U.S. ⸺, 131 S.Ct. 2846, 2851, 180 L.Ed.2d 796 (2011)); *see also Goodyear,* 131 S. Ct. at 2853 (quoting *International Shoe v. Washington,* 326 U.S. 310, 318 (1945) (General jurisdiction consists of "instances in which the continuous corporate operations within a state [are] so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities.").

In *Daimler*, the Court addressed whether the contacts of Mercedes Benz USA, Inc. ("MBUSA") within the state of California were sufficient to allow a California federal court to exercise personal jurisdiction over MBUSA's parent company.  134 S. Ct. at 746.  MBUSA had multiple California-based facilities, including a regional office, a vehicle preparation center, and a "classic car" center.  *Id.*  at 752.  MBUSA was also the largest supplier of luxury vehicles to

---

[3] Defendants are considered "foreign" corporations because they are not "domiciled in, organized under the laws of, or maintaining . . . [their] principal place of business in, the District of Columbia." D.C. Code § 13–422.

the California market.  *Id.*  MBUSA's extensive contacts, however, were not sufficient to conclude that California could exercise general jurisdiction over MBUSA's parent company.[4] The Court emphasized that a corporation is not "at home" in "every state in which it engages in a substantial, continuous, and systematic course of business[.]"  *Id.* at 760-61.  The Court characterized such an approach as "unacceptably grasping."  *Id.* at 761.  Rather, general jurisdiction "calls for an appraisal of a corporation's activities in their entirety, nationwide and worldwide."  *Id.* at 762. n.20.  "A corporation that operates in many places," observed the Supreme Court, "can scarcely be deemed at home in all of them."  *Id.*  "With respect to a corporation, the place of incorporation and principal place of business are 'paradig[m] . . . bases for general jurisdiction.' "  *Id.* at 761 (quoting *Goodyear*, 131 S. Ct. at 2856).  The Supreme Court also noted that "in an exceptional case, a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home in that State."  *Id.* at 761 n.19 (citing *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437 (1952) (holding that general jurisdiction over a Philippines corporation was proper in Ohio after it moved its headquarters to the state after the Japanese occupied the Philippines in World War II)).

---

[4] In *Daimler*, the Supreme Court imputed MBUSA's contacts to its parent company, Daimler, and concluded that there "would still be no basis to subject Daimler to general jurisdiction in California."  134 S. Ct. at 760.  The Court was unable to make a similar holding as to MBUSA because Daimler "failed to object below to plaintiffs' assertion that the California courts could exercise all-purpose jurisdiction over MBUSA."  *Id.* at 758.  Because Daimler procedurally waived the argument, the Supreme Court assumed for the purposes of that decision that MBUSA was "at home" in California.  *Id.*  That assumption did not alter the rest of the Court's analysis.

**b.  The Court Cannot Exercise General Personal Jurisdiction over Defendants**

Plaintiff argues that Defendants' contacts with the District of Columbia are "so continuous and systematic" as to render them "essentially at home" in the District of Columbia. Pl.'s Mot. at 9.[5]  Plaintiff argues that Defendants have established a "robust and permanent presence in the District," maintaining a physical business office, as well as mortgage branches at which they originate loans and carry out other mortgage lender functions.  *Id.* at 15.  Defendants are also registered to do business in the District and maintain an agent for service of process here.  *Id.*  Plaintiff argues that Defendants' "brick-and-mortar presence" in the District is sufficient under *Goodyear* and *Daimler*.  *Id.* at 1.  *Goodyear* and *Daimler*, according to Plaintiff, "simply clarify that general jurisdiction requires actual 'presence' within the forum."  *Id.* at 14.  The Court disagrees with Plaintiff's reading of these cases, and concludes that Defendants are not "essentially at home" in the District of Columbia.

In *Daimler*, the Supreme Court held that "[w]ith respect to a corporation, the place of incorporation and principal place of business are 'paradig[m] . . . bases for general jurisdiction.' " 134 S. Ct. at 760 (quoting *Goodyear*, 131 S. Ct. at 2856).  Here, SunTrust Banks, Inc. is a Georgia corporation with its principal place of business in Georgia, and SunTrust Mortgage, Inc. is a Virginia corporation with its principal place of business in Virginia.  Defs.' Mot. Exhibits A & B.  Therefore, the "paradigm bases for general jurisdiction" over Defendants would be Georgia and Virginia.  Defendants could also be subject to general jurisdiction in a forum other than Georgia and Virginia, but Defendants' contacts with that forum must be "so substantial and

---

[5] The Court finds it unnecessary to treat separately the contacts of SunTrust Mortgage, Inc. and the contacts of its parent company, SunTrust Bank, Inc.  Even if the Court were to assume an "agency" relationship between SunTrust Mortgage, Inc. and SunTrust Bank, Inc., their collective contacts would not be "so constant and pervasive" 'as to render the Defendants "essentially at home" in the District of Columbia.  *See Daimler*, 134 S. Ct. at 751.

of such a nature as to render the corporation *at home* in that State." *Daimler,* 134 S. Ct. at 760 n.19 (emphasis added). Plaintiff, however, has not shown, nor argued, that Defendants are any more "at home" in the District of Columbia than they are "at home" in the other states where Defendants maintain "substantial, continuous, and extensive business contacts." By Plaintiff's own admission, Plaintiff's argument "potentially subjects" Defendants to general jurisdiction in each of Defendants' eight "primary bases of operation." *See* Pl.'s Reply at 3, 16. In each of these eight "primary bases"—the District of Columbia, Florida, Georgia, Maryland, North Carolina, South Carolina, Tennessee, and Virginia—Defendants operate numerous retail branches and ATMs, and maintain a significant "brick-and-mortar" presence. *See* Pl. Exhibit A. Plaintiff's argument for general personal jurisdiction in the District of Columbia would therefore render Defendants "at home" in eight different jurisdictions encompassing much of the eastern seaboard. *See id.* The Supreme Court's decision in *Daimler* explicitly forecloses such an outcome. *See* 134 S. Ct. at 761-62. In *Daimler*, the Supreme Court held that if the defendant's California activities—which included extensive retail sales and a substantial "brick-and-mortar" presence—"sufficed to allow adjudication of" claims unrelated to the state of California, the same reach would "presumably be available in every State in which [the Defendant's] sales are sizeable." *Id.* at 761. As the Court observed, a "corporation that operates in many places can scarcely be deemed at home in all of them." *Id.* at 762 n.10.

Plaintiff argues that there is general jurisdiction over Defendants under *Gorman*. *See* Pl.'s Reply at 22. *Gorman*, however, was decided prior to *Goodyear* and *Daimler*, and the applicable test for jurisdiction under the Due Process Clause was whether the defendant's contacts with the District were merely "continuous and systematic." *See* 293 F.3d at 512 ("[T]he test that we will apply to determine whether the District has general jurisdiction in this case is the

traditional one: Were [defendant]'s contacts with the District 'continuous and systematic.' ").
After *Goodyear* and *Daimler*, the appropriate inquiry is "not whether a foreign corporation's in-
forum contacts can be said to be in some sense 'continuous and systematic,' it is whether that
corporation's affiliations with the State are so 'continuous and systematic' as to render [it]
essentially at home in the forum State."  134 S. Ct. at 762 (internal quotations omitted).  Even the
cases cited by Plaintiff apply the "essentially at home" test under *Daimler*/*Goodyear*, rather than
the "continuous and systematic" test under *Gorman*.  *See*, *e.g.*, *Alkanani v. Aegis Def. Servs.,
LLC*, 976 F. Supp. 2d 13, 29 (D.D.C. 2014) *appeal dismissed*, No. 14-7056, 2014 WL 4628907
(D.C. Cir. Aug. 11, 2014).  In *Alkanani*, decided two months after *Daimler*, the court observed,
"[m]oreover, and perhaps even more significant, the Supreme Court recently emphasized that
'engaging in a substantial, continuous, and systematic course of business' in the forum is not, in
and of itself, enough for general jurisdiction to comport with due process."  *Id.* at 29 (quoting
*Daimler,* 134 S. Ct. at 757-58).  Citing *Daimler*, the court concluded that the defendant
corporation's activities in the District of Columbia—which included (1) contract negotiations
and meetings with the U.S. government; (2) a website; (3) tax filings; and (4) contacts with non-
government clients—"did not render the company 'essentially at home' " in the District.  *Id.* at
35.  Therefore, even if Defendants' contacts with the District of Columbia are "continuous and
systematic," the Court must consider whether these contacts render Defendants "essentially at
home" in the District in light of Defendants' activities "in their entirety, nationwide and
worldwide." *Daimler,* 134 S. Ct. at 762 n.20.  When the Court views Defendants' contacts with
the District of Columbia in light of Defendants' contacts with their seven other "primary bases of
operation," the Court cannot conclude that Defendants are "essentially at home" in the District of
Columbia.  *See id.*  Accordingly, the Court lacks general jurisdiction over Defendants.  *See id.*

### c. Jurisdictional Discovery is Not Warranted

Plaintiff argues that, if the Court does not find sufficient support for general jurisdiction in the record, the Court should permit jurisdictional discovery rather than dismissing for lack of personal jurisdiction.  *See* Pl.'s Opp'n at 23.  The Court, however, concludes that jurisdictional discovery is not warranted.  To be granted jurisdictional discovery, "a plaintiff must have at least a good faith belief that such discovery will enable it to show that the court has personal jurisdiction over the defendant."  *Caribbean Broad. Sys., Ltd.*, 148 F.3d at 1090.  "Mere conjecture or speculation" is not enough to justify such discovery.  *FC Investment Group LC*, 529 F.3d at 1094.

Plaintiff seeks to conduct discovery relating to "the frequency and volume of Defendants' banking and mortgage transactions with individuals located in the District of Columbia, the number of employees Defendants employ in the District of Columbia, and the physical property Defendants occupy and use here and whether Defendants own or have long-term leases for these buildings."  *See* Pl.'s Opp'n at 24.  But the Court cannot "see what facts additional discovery could produce that would affect our jurisdictional analysis."  *Mwani*, 417 F.3d at 17.  At best, the additional discovery sought by Plaintiff would demonstrate that Defendants engage in a "substantial, continuous, and systematic course of business" in the District of Columbia, which is explicitly insufficient under *Daimler* to establish general jurisdiction.  134. S. Ct. at 760-61 (rejecting plaintiffs' argument that general jurisdiction over a corporate defendant exists in "every state in which it engages in a substantial, continuous, and systematic course of business").  Plaintiff has suggested no way in which additional discovery would yield information enabling them to show that Defendants are "essentially at home" in the District of Columbia, such as a situation where Defendants are running a *de facto* base of operations through the District.  *See Perkins*, 342 U.S. at 447-49 (finding general jurisdiction over corporation which had moved its

headquarters, including its president's office, to Ohio as part of a principal, if temporary, place of business); *In re Hellas Telecommunications (Luxembourg) II SCA*, 524 B.R. 488, 507-08 (Bankr. S.D.N.Y.) *adhered to*, 526 B.R. 499 (Bankr. S.D.N.Y. 2015) (finding nationwide jurisdiction over corporation whose principal location in New York served as its North American Regional Headquarters, spanned 1.6 million square feet, and employed 1,600 personnel, including 1,000 executives).  Because Plaintiff has not "reasonably demonstrated" that jurisdictional discovery would alter the Court's conclusions regarding jurisdiction, jurisdictional discovery is not justified.  *Exponential Biotherapies, Inc.*, 638 F.Supp.2d at 11.

**B.   The Court Shall Transfer this Action to the United States District Court for the Middle District of Florida in the Interest of Justice**

Plaintiff requests that the Court, in lieu of dismissal, transfer the case to the United States District Court for the Middle District of Florida pursuant to 28 U.S.C. § 1406, or in the alternative, 28 U.S.C. § 1631.  *See* Pl.'s Opp'n at 26.  The Court concludes that it is "in the interest of justice" under either provision to transfer this case to the Middle District of Florida.

**a.   Transferring this Action to the United States District Court for the Middle District of Florida is in the "Interest of Justice" Pursuant to 28 U.S.C. § 1406**

Plaintiff requests that the Court, in lieu of dismissal, transfer the case to the United States District Court for the Middle District of Florida pursuant to 28 U.S.C. § 1406.  *See* Pl.'s Opp'n at 26.  Section 1406(a) provides that, "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."  28 U.S.C. § 1406.

As a preliminary matter, the parties disagree as to whether a court may transfer a case under Section 1406 in the situation where a defendant has filed a motion to dismiss for lack of personal jurisdiction, but not a motion to dismiss for improper venue.  Plaintiff argues that

Section 1406 broadly permits transfer to cure a number of procedural obstacles including the lack of personal jurisdiction. Pl.'s Opp'n at 26-27. Defendants argue that Section 1406 permits a transfer only where the defendant has objected to venue. Defs.' Reply at 15-16. The Court concludes that Section 1406 permits a transfer where, as here, a defendant has moved to dismiss for lack of personal jurisdiction—but not for improper venue—and the plaintiff has responded with a request to transfer, in lieu of dismissal.

### 1. Section 1406 Permits Transfer, in Lieu of Dismissal, where a Defendant Has Challenged Personal Jurisdiction, but not Venue

The Supreme Court and the D.C. Circuit have broadly interpreted 28 U.S.C. §1406 to hold that a district court may transfer a case to a proper venue when transfer would further the interests of justice by removing procedural obstacles that would otherwise prevent a prompt adjudication on the merits. In *Goldlawr*, the Supreme Court held that the language of Section 1406 "is amply broad enough to authorize the transfer of cases, however wrong the plaintiff may have been in filing his case as to venue, whether the court in which it was filed has personal jurisdiction over the defendant or not." 369 U.S. at 466. Section 1406(a) achieves the "general purpose" of "removing whatever obstacles may impede an expeditious and orderly adjudication of cases and controversies." *Id.* at 466-67. A transfer under Section 1406(a) may remove "procedural obstacles" such as "the lack of personal jurisdiction, improper venue and statute of limitations bars." *Sinclair*, 711 F.2d at 294 (citing *Dubin v. United States*, 380 F.2d 813, 816 (5th Cir. 1967).

Defendants argue that these cases "stand for the proposition that, when a defendant moves to dismiss for lack of **venue**, and the court also lacks personal jurisdiction over the defendant, the court may invoke 28 U.S.C. § 1406 and transfer **venue**." Defs.' Reply at 13 (emphasis in original). The cases, according to Defendants, "do not stand for the idea that a

motion to dismiss for lack of personal jurisdiction alone may be met with a venue transfer."

Defs.' Reply at 13.  Defendants' position is at odds with the plain reading of the D.C. Circuit's

opinion in *Sinclair* and its progeny.  In *Sinclair*, the court did not discuss whether the defendants

filed a motion to dismiss for lack of venue, and it does not state that such a motion is a

prerequisite for a court to invoke 28 U.S.C. § 1406(a).  *See* 711 F.2d. at 292.  The case simply

says that the defendants "moved to dismiss the action on various grounds" and that the "plaintiffs

opposed the motions for dismissal and, pursuant to 28 U.S.C. § 1406(a) (1976), moved to have

all three cases transferred. . . ."  *Id.*  Several cases, each citing *Sinclair*, have held that a venue

transfer under 28 U.S.C. § 1406(a) is squarely within the court's "sound discretion" in the

precise circumstances at issue here—where the defendant is challenging personal jurisdiction,

but not venue.  *See Atwal v. Myer*, 841 F. Supp. 2d 364, 368 (D.D.C. 2012) (transferring case

under 28 U.S.C. § 1406(a) to the Northern District of Texas after resolving defendants' motion to

dismiss for lack of personal jurisdiction); *Capital Bank Int'l Ltd. v. Citigroup, Inc.*, 276 F. Supp.

2d 72, 78 (D.D.C. 2003) (transferring case under 28 U.S.C. § 1406(a) to the District of Delaware

after plaintiffs requested a transfer, in lieu of dismissal, in their opposition to defendants' motion

to dismiss for lack of personal jurisdiction).  Accordingly, a court may transfer a case under

Section 1406(a) where, as here, the defendant has moved to dismiss for lack of personal

jurisdiction, and the plaintiff has responded with a request to transfer, in lieu of dismissal.  *See*

*Sinclair*, 711 F.2d. at 292; *Citigroup*, 276 F. Supp. 2d at 72.

### 2.  It is in the "Interest of Justice" under 28 U.S.C. § 1406(a) to Transfer this Case to a Proper Venue

Section 1406(a) provides that, "[t]he district court of a district in which is filed a case

laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice,

transfer such case to any district or division in which it could have been brought."  28 U.S.C.

§ 1406.  Accordingly, in order to transfer an action under Section 1406, the transferor court must find that (1) the transferor court is a "wrong" venue, (2) the case "could have been brought" in the transferee court, and (3) transfer to the transferee court would be "in the interest of justice." *See id.*  The Court finds that all three elements are met in this case.

### i.   The District of Columbia is a "Wrong" Venue

Defendants argue that venue cannot be "wrong" in this case because Defendants have not moved to dismiss for lack of venue, and thereby, they have waived any objections to venue.  *See* Defs.' Reply at 14.  Whether venue is "wrong" under Section 1406(a), however, "depends exclusively on whether the court in which the case was brought satisfies the requirements of federal venue laws."  *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 134 S. Ct. 568, 577 (2013).  The applicable "federal venue law" in this case, 28 U.S.C. § 1391(b),[6] states that "[a] civil action may be brought in—(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action."  28 U.S.C. § 1391(b).  A corporate defendant is deemed to reside in "any district in which it is subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. § 1391(c).

Here, Defendants do not "reside" in the District of Colombia for purposes of § 1391(b)(1) because they are corporations that are not subject to personal jurisdiction in the District of

---

[6] Section 1391 governs "venue generally," that is, in cases where a more specific venue provision does not apply.  *Cf., e.g.*, 28 U.S.C. § 1400 (identifying proper venue for copyright and patent suits).

Columbia.  *See* Part III.A, *supra*.  A "substantial part of the events" giving rise to the claims in this action did not occur in the District of Columbia under § 1391(b)(2).  *See* Compl. ¶ 18-41. As to 1391(b)(3), there is another district in which the action may be brought, *i.e.*, the Middle District of Florida.  *See* Part III.B.a.2.ii, *infra*.  Therefore, the District of Columbia is a "wrong" venue under 28 U.S.C. § 1391.

### ii.  This Case Could Have Been Brought in the Middle District of Florida

Plaintiff alleges, and Defendants do not dispute, that venue and personal jurisdiction would lie in the Middle District of Florida.  Florida Statutes Section 48.193 provides for specific personal jurisdiction—*i.e.*, based on claims arising in Florida—over defendants "operating, conducting, engaging in, or carrying on a business . . . in this state or having an office or agency in this state" or "committing a tortious act within this state."  Fla. Stat. Ann. § 48.193(1)(a)(1)-(2).  Defendants are registered to conduct business in Florida, and they are alleged to have committed a tortious act in the Middle District of Florida by allegedly subjecting Plaintiff to discriminatory lending policies.  Pl.'s Opp'n at 27.  For the same reasons, venue lies in the Middle District of Florida, Orlando Division.  *See* 28 U.S.C. § 1391(a), 1391(b)(2).[7]

### iii.  A Transfer to the Middle District of Florida Would be in the "Interest of Justice"

Plaintiff argues that transfer would further the "interest of justice" because Plaintiff's claims under the Fair Housing Act, 42 U.S.C. § 3604(c), 3604(f)(1), 3604(f)(2), and 3605 would be time barred if Plaintiff is required to refile their case in a new jurisdiction.  *See* Pl.'s Opp'n at

---

[7] Plaintiff's property is located in Volusia County, and the SunTrust Mortgage officer with whom she interacted is based in Seminole County.  Both Counties fall in the Middle District, Orlando Division. Pl.'s Opp'n at 27 n. 12.

27-28.  Plaintiff's claims under the Fair Housing Act are subject to a two-year limitations period, which, without equitable tolling or the application of the continuing violations doctrine, would be time barred if Plaintiff had to refile.  *See* 42 U.S.C. § 3613(a).  Defendants do not dispute that Plaintiff's Fair Housing Act claims would be time barred.  Rather, Defendants argue that transfer would not be in the "interest of justice" because Plaintiff "knew, or should have known, that [she] filed suit in the wrong jurisdiction."  Defs.' Reply at 16.

According to the D.C. Circuit, transfer is in the "interest of justice" where "without a transfer the cause of action would be barred by the running of the applicable statute of limitations."  *Sinclair*, 711 F.2d at 294 (citing *Burnett v. New York Central Railroad Co.*, 380 U.S. 424, 430 (1965)); *see also Ebron v. Dep't of the Army*, 766 F. Supp. 2d 54, 58-59 (D.D.C. 2011) (transferring case under § 1406 where dismissal would preclude plaintiff from refiling); *Williams v. GEICO Corp.*, 792 F. Supp. 2d 58, 64 (D.D.C. 2011) (same).  Transfer is also in the "interest of justice" where transfer would save the parties the time and expense associated with refiling, *see*, *e.g.*, *Capital Bank*, 276 F. Supp. 2d at 78, and where transfer would not prejudice the defendant, *see, e.g.*, *Delta Sigma Theta Sorority Inc. v. Bivins*, 20 F. Supp. 3d 207, 219 (D.D.C. 2014).

Defendants, who concede that Plaintiff's claims may be time barred if the case is not transferred, argue that transfer is not "in the interest of justice" because Plaintiff "knew or should have known that [she] filed suit in the wrong jurisdiction."  *See* Defs.' Reply at 16.  Defendants cite *McFarlane v. Esquire Magazine*, 74 F.3d 1296, 1301 (D.C. Cir. 1996), in which the D.C. Circuit held that the district court did not abuse its discretion by denying a motion to transfer where the statute of limitations governing the claim had expired.  *Id.*  In *McFarlane*, the district court found that it lacked personal jurisdiction over a co-defendant who was a resident of New

York.  *Id.*  The district court denied the plaintiffs' motion to transfer, in lieu of dismissal, holding

that the plaintiffs were "put on notice" by the defendant's answer that the District of Columbia

lacked personal jurisdiction over the defendant.  *Id.*  The district court concluded that plaintiffs

would not be prejudiced by the denial because they could still seek recovery against the

remaining defendants in the District of Columbia.  *Id.*  The court also found that a transfer was

not "in the interest of justice" because the District of Columbia was "the nexus of the alleged

injury and activities described in the statements at issue."  *McFarlane v. Esquire Magazine*, No.

CIV. 92-0711 TAF, 1994 WL 510088, at *7 (D.D.C. June 8, 1994) *aff'd*, 74 F.3d 1296 (D.C. Cir.

1996).

    The circumstances of this case are distinguishable from the facts of *McFarlane*.  First,

Plaintiff, unlike the plaintiff in *McFarlane*, would be prejudiced if the case is not transferred

because she would no longer be able to seek *any* recovery on her Fair Housing Act claims.  *See*

*Sinclair*, 711 F.2d at 294; *Ebron*, 766 F. Supp. 2d at 58-59; *Williams*, 792 F. Supp. 2d at 64.

Second, unlike the plaintiff in *McFarlane*, Plaintiff here is suing corporate defendants.

Plaintiff's situation is similar to that of the plaintiff in *Goldlawr*, who filed suit against corporate

defendants in a state where the plaintiff believed the corporation "transact[ed] business" and

therefore was subject to the court's jurisdiction.  369 U.S. at 466.  In *Goldlawr*, the statute of

limitations governing the plaintiff's claim expired, and the Supreme Court concluded that a

transfer was in the "interest of justice," recognizing the "difficulties which may arise in

determining where corporations can be found or transact business."  *Id.* at 466 n.11 (citing

*International Shoe*, 326 U.S. at 310).  Accordingly, it is in the interest of justice to transfer this

case, so that Plaintiff's Fair Housing Act claims are not barred by the running of the applicable

statute of limitations.  *See id.* at 466.

A transfer would also be in the "interest of justice" because a transfer would save the parties the time and expense associated with refiling. *Capital Bank*, 276 F. Supp. 2d at 78. Transferring the case to the Middle District of Florida would provide the parties with an appropriate forum to "efficiently litigat[e]" the matter. *See Sinclair*, 711 F.2d at 294. Defendants would not be prejudiced by a transfer to the Middle District of Florida in light of the fact that the events at issue took place in that district, and they have raised no arguments regarding any such prejudice. *See Delta Sigma Theta Sorority Inc.*, 20 F. Supp. 3d at 219. Accordingly, the Court finds that it is in the "interest of justice" to transfer the case to the Middle District of Florida pursuant to 28 U.S.C. § 1406.

### b. Alternatively, Transferring this Action is in the "Interest of Justice" Pursuant to 28 U.S.C. § 1631

Plaintiff alternatively requests that the Court transfer the case to the Middle District of Florida pursuant to 28 U.S.C. § 1631. Pl.'s Opp'n at 26 n.10. Under Section 1631, courts have the authority to transfer a civil action filed in the wrong jurisdiction, "if it is in the interest of justice" to do so. When a case is transferred pursuant to 28 U.S.C. § 1631, it "proceed[s] as if it had been filed in ... the court to which it is transferred on the date upon which it was actually filed in ... the court from which it is transferred." *Id.* "There are three elements to a section 1631 transfer: (1) there must be a lack of jurisdiction in the district court; (2) the transfer must be in the interest of justice; and (3) the transfer can be made only to a court in which the action could have been brought at the time it was filed or noticed." *Fasolyak*, 2007 WL 2071644, at *11 (quoting *Ukiah Adventist Hosp.*, 981 F.2d at 549). All three requirements are met in this case.

### 1.  This Court Lacks Jurisdiction

A district court may transfer an action pursuant to Section 1631 if "that court finds that there is a want of jurisdiction."  28 U.S.C. § 1631.  Defendants argue that Section 1631 permits transfer only where a court lacks *subject matter jurisdiction*, not where the court lacks *personal jurisdiction*.  *See* Defs.' Reply at 14.  Defendants' position has been embraced only by a minority of district courts outside of this circuit.  *See*, *e.g.*, *Pedzewick v. Foe*, 963 F. Supp. 48, 50 (D. Mass. 1997) (citing a Senate Report issued when Congress enacted Section 1631).  Most courts, including the D.C. Circuit, have interpreted Section 1631 according to its plain meaning, concluding that a court may transfer an action where there is a want of *any* jurisdiction, whether it be subject matter jurisdiction or personal jurisdiction.  *Cf. Hill v. U.S. Air Force*, 795 F.2d 1067, 1068–1070 (D.C. Cir. 1986) (considering whether a district court abused its discretion by failing to transfer a case under 28 U.S.C. § 1631 where the court lacked personal jurisdiction); *see also Trujillo v. Williams*, 465 F.3d 1210, 1223 (10th Cir. 2006); *Cimon v. Gaffney*, 401 F.3d 1, 7 n.21 (1st Cir. 2005); *Roman v. Ashcroft*, 340 F.3d 314, 328 (6th Cir. 2003); *Island Insteel Systems, Inc. v. Waters*, 44 V.I. 389, 296 F.3d 200, 218 n.9 (3d Cir. 2002); *Wade v. Farmers Ins. Group*, 96 F.3d 1450 (7th Cir. 1996); *Miller v. Hambrick*, 905 F.2d 259, 262 (9th Cir. 1990); *Gower v. Lehman*, 799 F.2d 925 (4th Cir. 1986); *Slatick v. Director, Office of Workers' Compensation Programs, U.S. Dept. of Labor*, 698 F.2d 433, 434 (11th Cir. 1983).  Accordingly, the first requirement of a Section 1631 transfer—that the district court in which the action was originally filed lacks jurisdiction—is met in this case because the Court lacks personal jurisdiction over defendants.  *See* Part B, *supra*.

### 2. Transfer is in the Interest of Justice

A district court may transfer an action pursuant to Section 1631 if that court finds that transfer is in in "interest of justice."  The Court concludes that transfer is in in the "interest of justice" under Section 1631 for the reasons stated in the Court's analysis of this prong in its discussion concerning Section 1406(a).  *See* Part III.B.a.2.iii, *supra*.

### 3. This Action Could Have Been Brought in the Middle District of Florida

Finally, a district court may transfer an action pursuant to Section 1631 only to a court in which the action "could have been brought at the time it was filed or noticed."  28 U.S.C. § 1631. Defendants do not dispute that venue and personal jurisdiction would lie in the Middle District of Florida.  *See* Defs.' Reply at 13-18.  The Court concludes that the case could have been brought in the Middle District of Florida for the reasons stated in the Court's analysis of this prong in its discussion concerning Section 1406(a).  *See* Part III.B.a.2.ii, *supra*.

Accordingly, the Court finds that it is in the "interest of justice" to transfer the case to the Middle District of Florida pursuant to 28 U.S.C. § 1631.

## IV. CONCLUSION

For the foregoing reasons, the Court DENIES Defendants' [14] Motion to Dismiss for Lack of Personal Jurisdiction and DENIES Plaintiff's [24] Motion for Leave to File Limited Surreply.  The Court shall transfer this matter to the U.S. District Court for the Middle District of Florida pursuant to 28 U.S.C. § 1406(a) and 28 U.S.C. § 1631.

An appropriate Order accompanies this Memorandum Opinion.

Dated: September 21, 2015

                                                    ___/s/_____
                                                    COLLEEN KOLLAR-KOTELLY
                                                    United States District Judge